United States *v.* F. W. Myers & Co., Inc. (No. 4911)[1]

---

[1] C. A. D. 671.

United States Court of Customs and Patent Appeals, January 22, 1958

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Richard H. Welsh* and *William J. Vitale*, trial attorneys, of counsel), for the United States.

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for appellee.

[Oral argument December 4, 1957, by Mr. Welsh and Mr. Schwartz]

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH, and JACKSON (retired), Associate Judges

JOHNSON, Chief Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, First Division, entered pursuant to its decision (C. D. 1810), sustaining a protest against the collector's classification and duty assessment of the merchandise here involved.

The merchandise, which constitutes five shipments identical in all material respects, was invoiced as crating lumber for crating purposes and was entered free of duty under the provision in paragraph 1803 (1) of the Tariff Act of 1930 for "sawed lumber and timber, not further manufactured than planed, and tongued and grooved," subject to tax at the appropriate rate applicable to lumber under the Internal Revenue Code.

There is no question but that a large portion of the instant merchandise consists of unitary pieces of wood, the remainder being made up of two or more pieces of wood which have been joined together by what is known as a "Linderman joint."

The Collector of Customs held that the latter pieces were dutiable under the provisions of paragraph 412 of the Tariff Act of 1930, as modified by the Presidential proclamation relating to the General Agreement on Tariffs and Trade, T. D. 51802, as "manufactures of wood" at a rate of 16⅔ per centum ad valorem. He also held that, since the importer (appellee here) had failed to segregate these latter pieces from the remainder of each shipment, and since the quantity of each class of merchandise could not be readily ascertained, the entire importation was dutiable at the rate of 16⅔ per centum under the provisions of paragraph 412, as modified, by virtue of the commingled goods provision of the Tariff Act of 1930, section 508.

Appellee protested the foregoing classification, urging that the merchandise is properly free of duty as lumber under paragraph 1803, *supra*, or alternatively at the rate of 3¾% ad valorem under paragraph 407, as modified by the Presidential proclamation relating to the Torquay Protocol of the General Agreement on Tariffs and Trade, T. D. 52739, as "packing-box shooks,[2] of wood, not specially provided for" or alternatively at a rate of 10% ad valorem under paragraph 405 as "wood unmanufactured, not specially provided for."

Only the claim for duty under paragraph 407 was pressed at the trial, said claim ultimately being sustained by the court below. From the judgment of the Customs Court the Government (appellant here) appeals, urging the correctness of the collector's classification.

Paragraph 412, as modified, reads as follows insofar as pertinent:

Manufactures of wood, or bark, or of which wood or bark is the component material of chief value, not specially provided for:

\*     \*     \*     \*     \*     \*     \*

Other_____ 16⅔% ad val.

Paragraph 407, as modified, reads as follows insofar as pertinent:

Packing boxes (empty), and packing-box shooks, of wood, not specially provided for_____ 3¾% ad val.

Section 508 reads as follows:

Whenever dutiable merchandise and merchandise which is free of duty or merchandise subject to different rates of duty are so packed together or mingled that the quantity or value of each class of such merchandise can not be readily ascertained by the customs officers, the whole of such merchandise shall be subject to the highest rate of duty applicable to any part thereof, unless the importer or consignee shall segregate such merchandise at his own risk and expense under

---

[2] The Customs Court cited *Central Vermont Railway, Inc.* v. *United States*, 31 Cust. Ct. 160, C. D. 1563, to the effect that a "shook" is a set of parts of boxes, ready to be put together by mere assembly or nailing, with nothing remaining to be done to the parts themselves. Both appellant and appellee agree to this definition, appellant, in fact, defining one of the issues in its brief as follows: "Does the evidence clearly prove that the merchandise consists of boxes in knock-down condition?" Accordingly, for purposes of this appeal, we will accept the definition agreed upon by the parties.

customs supervision within ten days after entry thereof, in order that the quantity and value of each part or class thereof may be ascertained.

At the trial below, appellant contended that appellee is estopped from denying the correctness of the invoiced and entered descriptions of the here involved merchandise. The Customs Court, citing *United States* v. *Alex Schechter Corp.*, 25 C. C. P. A. (Customs) 107, T. D. 49240 and *United States* v. *Wo Kee & Co.*, 21 C. C. P. A. (Customs) 341, T. D. 46880, as well as several other cases, rejected this argument. Appellant, in its brief, acquiesces in this holding and therefore nothing more need be said on this point on this appeal.

Three witnesses testified below, one on behalf of appellee and two on behalf of appellant. Walter E. Jones, president of the ultimate consignee of all of the instant merchandise, testified that he saw the merchandise at the time his firm received it and had personal knowledge as to what his firm did with it. In substance, his testimony was to the following effect:

1. That the merchandise was delivered directly to his plant from Canada;

2. That it was delivered in truck-loads of from 2500 to 3000 bundles, each bundle containing the requisite number of sides, tops, bottoms and ends to form complete boxes;

3. That he was absolutely positive that the ends were in the shipment as delivered; and

4. That the merchandise was ordered by complete box units, rather than as pieces of wood, and that there were a sufficient number of pieces to make the corresponding number of box units.

The second witness, Mr. George A. Makin, customs inspector at Trout River, New York, testified on behalf of appellant that he saw and inspected the instant merchandise upon its importation into this country; that he did not see any end pieces in the shipment; that he was not able to tell how many pieces were glued together and how many were not; that to do this, the trucks would have to be unloaded and each piece counted; and that this would take approximately one day. He also admitted that, as far as the end pieces were concerned, "I did not see any; they could have been in the shipment, because I didn't unload the whole truck."

The last witness, Mr. Paul F. Flynn, Deputy Collector of Customs at Malone, New York, devoted the greater portion of his testimony to a conversation he had had with the shipper of the instant merchandise. His testimony was to the following effect:

1. That he had had a conversation with one J. W. L. Funchion, the shipper of the instant merchandise, with respect to shipments other than those here involved;

2. That Mr. Funchion admitted that no ends were shipped with these other shipments;

3. That this conversation "was reflected back on the five previous shipments that had been made" and that Mr. Funchion "covered the whole history of the case, everything he had been shipping"; and

4. That he didn't personally examine any of the instant merchandise.

Based upon the foregoing testimony, appellant attempts to demonstrate that no ends were included in the instant importation and that, therefore, packing-box shooks (boxes in knock-down condition) are not here involved; that accordingly, we are dealing with commingled merchandise; that cases such as *United States v. E. E. Holler*, 28 C. C. P. A. (Customs) 124, C. A. D. 133; *S. Schapiro & Sons v. United States*, 29 C. C. P. A. (Customs) 235, C. A. D. 196; and *Pink Supply Co. v. United States*, 32 C. C. P. A. (Customs) 48, C. A. D. 284, set forth the proposition that "proof of respective quantities in segregation cases is of no avail when made upon facts ascertained outside of the jurisdiction of customs officials and when the mandate of the statute with respect thereto has been ignored" (the requirement of segregation by the importer when the identity of the merchandise may not be readily ascertained at the time of importation). Appellant characterizes the testimony of Jones as "uncorroborated" and as "insufficient to disprove the correctness of the invoice descriptions."

We are of the opinion that appellant's contentions cannot be upheld and that the judgment of the Customs Court must be affirmed.

At the outset, it is important to determine the effect and significance of the testimony offered by the three witnesses. The Customs Court gave maximum weight to Jones' testimony and minimum weight to that of appellant's witnesses. With respect to Flynn's testimony, the court stated:

> We are of the opinion that such evidence is too vague, remote, and unconnected with the matter at hand to overcome the clear and positive direct testimony offered by the plaintiff to the effect that the shipments consisted of sets of parts of boxes, including ends, in knocked-down condition.

It is well established that this court will not reverse the lower court on a question of fact except where the findings are without evidence to support them, or are clearly contrary to the weight of the evidence. *Carey & Skinner, Inc. v. United States*, 42 C. C. P. A. (Customs) 86, 90, C. A. D. 576. In the instant case, there is no question but that there is substantial evidence to support the lower court's findings of fact. Neither of the two witnesses for appellant spoke from complete personal knowledge. Makin admitted that the end pieces "could have been in the shipment, because I didn't unload the whole truck"; Flynn hadn't examined "any of it." On

the other hand, Jones spoke from his personal knowledge and refused to yield on the question as to whether ends were present despite persistent cross-examination. His testimony, if believed (as we are prone to do), establishes that the importation consisted of packing boxes in knock-down condition. That his testimony was not "corroborated" is of no significance, as there is no such requirement in the field of customs law. At best, the lack of corroboration might only go to the weight of the evidence, and not to its sufficiency.

Having established that the instant merchandise did consist of packing-box shooks, the remainder of appellant's case must fall. Section 508 only applies when *"dutiable merchandise and merchandise which is free of duty or merchandise subject to different rates of duty* are so packed together or mingled that the quantity or value of each class of such merchandise can not be readily ascertained by the customs officers." (Emphasis added.) Where the merchandise does not, *in fact*, correspond to this description, the section cannot apply. Since here, there was a single tariff entity, section 508 cannot be considered. That section cannot, in a case such as this, preclude proof of the correct description of the merchandise by protest of the importer, as allowed by *United States* v. *Wo Kee & Co., supra.*

Appellant's contention that unless segregation is required in a case such as this, the door would be left open to fraud, may have merit, but the procedure it suggests cannot be required by us as an answer to the problem. The same possibility of fraud existed in the *Wo Kee & Co.* and *Alex Schechter Corp.* cases, *supra.* We cannot correct an evil, if in fact there is such evil, by rewriting a statute for Congress.

In this connection, it is interesting to note that Congress was apprised, prior to its passing the Tariff Act of 1930, of the custom with respect to the shipment of packing-box shooks. In the Summary of Tariff Information, 1929, vol. 1, at p. 937, it is stated that:

Box shooks are pieces of wood sawed to exact measurement so that, when assembled, the pieces will form the tops, bottoms, sides, and ends of boxes of given dimensions. *For convenience in handling, shipping, and assembling, each part—top, bottom, sides, and ends—of a box is generally bundled separately.* * * * (Emphasis added.)

Surely Congress was aware, in light of the above statement which was before it in its deliberations on the Act, of the possibility of fraud, if any. It obviously did not intend section 508 to be used as a means to preclude such fraud.

For the foregoing reasons, the judgment of the Customs Court is *affirmed.*

JACKSON, J., Retired, recalled to participate.

WORLEY, J., concurring.

I concur in the conclusion stated in the opinion that since the evidence supports the finding of the Customs Court that the instant merchandise did, in fact, consist of packing-box shooks, the decision of that court must be affirmed. Certainly the practice followed by the importer in invoicing the merchandise as crating lumber, free of duty, and only revealing its actual identity as packing box shooks after free entry had been denied is not to be commended, but it would not be proper to make such conduct the basis for assigning a classification at variance with what the merchandise has actually been shown to be. The provision of a remedy in such case would appear to be a matter within the province of Congress rather than that of the courts.